**Jeffrey M. Edelson, OSB #880407**
JeffEdelson@MHGM.com
**Lawson E. Fite, OSB #055573**
LawsonFite@MHGM.com
MARKOWITZ, HERBOLD, GLADE
  & MEHLHAF, P.C.
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax:  (503) 323-9105

      Attorneys for Plaintiff Gretchen Brooks

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GRETCHEN BROOKS**, an individual, | CV No.14-cv-1232 |
| Plaintiff, | **COMPLAINT** |
| vs. | (Fraud; Negligent Misrepresentation; Breach of Contract; Breach of Duty of Good Faith and Fair Dealing; Conversion; Elder Financial Abuse) |
| **HARLON RIP CASWELL**, an individual, **RIP CASWELL SCULPTURES, INC.**, an Oregon corporation d/b/a **CASWELL GALLERY**, an Oregon assumed business name, and **CASWELL PROPERTIES, LLC**, a Washington limited liability company, and **DOES 1-5**, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, Gretchen Brooks ("Brooks"), for her complaint against defendants Harlon Rip

Caswell, an individual, Rip Caswell Sculptures, Inc. ("RCS"), an Oregon corporation d/b/a

Caswell Gallery, an Oregon assumed business name, and Caswell Properties, LLC, and Does 1-

5, alleges:

**Page 1 -   COMPLAINT**

## INTRODUCTION

1.      Brooks loaned over five-and-a-quarter million dollars to defendants RCS and Caswell Properties, entities controlled by defendant Harlon Rip Caswell, in order to facilitate defendants' development of Caswell's sculpture business.  Defendants refused to repay the loans, or even to recognize they owed Brooks anything, claiming that their obligations were contingent on events that might never occur.  Brooks was forced to sue Caswell and his entities, obtaining a jury verdict in her favor that the loans were enforceable and payable.  The parties subsequently reached a settlement under which defendant RCS signed a promissory note ("Note") to Brooks for $650,000.

2.      RCS never intended to pay the Note, but defendants persuaded Brooks to discount the amount owed to her based on their promise to pay.  Defendants only entered into the agreement to buy Brooks' cooperation in defendants' separate malpractice suit against their own lawyer.  Shortly after getting Brooks' testimony, within days of obtaining a financial settlement in the malpractice case, and after making only three of 81 payments, RCS defaulted on the Note. Brooks now seeks to obtain the full settlement which defendants' wrongful actions deprived her.

### PARTIES

3.      Plaintiff Gretchen Brooks is a citizen of Clark County, Washington.

4.      Defendant Harlon Rip Caswell is a citizen of Multnomah County, Oregon.

5.      Defendant Rip Caswell Sculptures, Inc., doing business as Caswell Gallery, is an Oregon corporation with its principal place of business in Multnomah County, Oregon.  RCS is the successor in interest, by merger, to Rip Caswell Studio, Inc., a former Oregon corporation. Harlon Rip Caswell is the President and Secretary of RCS.

**Page 2 -   COMPLAINT**

6.      Defendant Caswell Properties, LLC is a limited liability company organized under the laws of Washington.  On information and belief, Harlon Rip Caswell is the manager and sole member of Caswell Properties, LLC.

7.      Does 1 through 5 are persons or entities who acted in concert with defendants but whose identities are as yet unknown to plaintiff.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as plaintiff is a citizen of Washington, all defendants are citizens of states other than Washington, and the amount in controversy herein is greater than $75,000.

9.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and LR 3-2(b), as all defendants are residents of Oregon and a substantial part of the events giving rise to this action occurred in Multnomah County, Oregon.

## FACTUAL ALLEGATIONS

10.      In a series of advances between early 2006 and late 2009, Brooks loaned defendants RCS and Caswell Properties a total of approximately $5.26 million.  The purpose of the loans was to enable defendants to expand their bronze sculpture business and associated gallery.

11.      Brooks called in the loans in late 2009, but defendants refused to pay.  Defendants claimed that their repayment obligations were entirely depended on the success of the expansion initiative financed by Brooks.

12.      Accordingly, Brooks was forced to file an action in Multnomah County Circuit Court, captioned *Brooks v. Caswell*, No. 1001-00388, on January 8, 2010.  Defendants

**Page 3 -   COMPLAINT**

counterclaimed for a declaration that the parties had entered into a partnership and for other claims including breach of fiduciary duty.

13.     The case was tried to a jury in April and May 2011.  The jury's verdict established that, of the $5.26 million in principal, approximately $3.45 million was due and payable at a reasonable time, and $1.81 million was due on demand.  The jury also found that Brooks and defendants RCS and Caswell Properties were engaged in an implied partnership, and the jury awarded damages on other claims to Brooks of $109,800 and to defendants of approximately $2.49 million.

14.     The net result of the jury's verdict was that defendants owed Brooks $2.88 million.

15.     In September 2011, prior to a hearing on additional claims, the parties entered into a "Settlement Agreement and Mutual Release" ("Agreement").

16.     Under the Agreement, the parties released all claims that had been at issue in the Multnomah County action.  Brooks also released the debts defendants owed her in exchange for, among other consideration, the Note in the amount of $650,000 made in her favor by RCS.  The Note accrued interest of 4% per annum, to be compounded yearly.  Defendants also assigned to Brooks a contingent interest in defendants' own suit against their former counsel, and transferred certain other property interests to Brooks.

17.     The Note called for monthly payments beginning on March 1, 2012 and continuing for the next 81 months.  The first three monthly payments were to be $2,500, followed by 12 payments of $4,000 each, then 66 equal payments until the Note was paid in full.

18.     The Note was secured by a lien on certain molds to be used to cast sculptures by Caswell.  Brooks duly recorded the lien on the collateral with the Oregon Secretary of State.

**Page 4 -   COMPLAINT**

19.     The Agreement required RCS to, by November 16, 2011, store all the molds at Parks Bronze in Enterprise, Oregon.  The Agreement also required that RCS provide Brooks copies of invoices for any sales of sculptures from the molds.

20.     During the course of negotiations for the Agreement, and by signing the Agreement on September 21, 2011, defendants all represented that they intended in good faith to comply with all their obligations under the Agreement.

21.     RCS never fully complied with the Agreement's requirement to transfer all the subject molds to Parks Bronze.  On information and belief, defendants have failed to ensure that the molds are protected from the elements and deterioration.

22.     RCS made only three payments on the Note, totaling $10,000.  These payments were insufficient to cover even the interest accruing on the Note between the time it was executed and the first payment due date.  The last payment was made in May 2012.

23.     As the Note was coming due, defendants were busy litigating the malpractice case against their former counsel.  Brooks agreed to sit for a deposition in the case in late June 2012.

24.     Under the provisions of the Agreement and the Note, RCS was entitled to skip one payment a year.  It skipped the July 2012 payment.

25.     In early August 2012, defendants settled the malpractice suit with their former lawyer.

26.     Mere days later, on August 6, 2012, defendants' counsel stated in an email that RCS would not be making the August payment and that Brooks was "free to exercise her rights in the molds."  This statement was the first indication to Brooks that RCS intended not to make any further payments on the Note.

27.     Defendants have made no further payments on the Note.

**Page 5 -   COMPLAINT**

28.     Defendants RCS, Caswell, and Caswell Properties have acted in concert with regard to all actions described herein.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Fraud)

29.     Brooks incorporates paragraphs 1 through 27 herein by reference.

30.     Defendants falsely represented RCS's intent to pay on the Note, and falsely represented RCS's intent to comply with the Agreements requirements regarding the molds, in order to induce Brooks to sign the Agreement, and to provide releases of indebtedness therein.

31.     Brooks reasonably relied on defendants' representations in entering into the Agreement.

32.     As a result of defendants' fraud, Brooks has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

### (In the alternative to the First Claim for Relief)

33.     Brooks incorporates paragraphs 1 through 31 herein by reference.

34.     At the time of the negotiation of the Agreement, a jury had found that Brooks and defendants RCS and Caswell Properties were partners in fact under Oregon's Revised Uniform Partnership Act.  As a result of this finding, defendants owed fiduciary duties to Brooks in the negotiation of the Agreement.

35.     Defendants negligently misrepresented RCS's intent to pay on the Note, and negligently misrepresented their intent to comply with the Agreement's requirements regarding

the molds, in order to induce Brooks to sign the Agreement, and to provide releases of indebtedness therein.

36.    Brooks reasonably relied on defendants' representations in entering into the Agreement.

37.    As a result of defendants' negligent misrepresentation, Brooks has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract – against defendant RCS only)

### (In the alternative to the First and Second Claims for Relief)

38.    Brooks incorporates paragraphs 1 through 37 herein by reference.

39.    The Note and the Agreement required RCS to make payments as specified in the Note.

40.    The Agreement and an associated Security Agreement also required RCS to move all of the collateral to Parks Bronze and to provide annual reports of any sales of sculptures from the molds.

41.    RCS has breached the above contractual obligations.

42.    With respect to the Note, RCS has unequivocally repudiated all obligations under the Note that are outstanding or executory.

43.    As of August 1, 2014, the total amount payable on the Note is $713,573.42. Interest will continue to accumulate at 4% per annum, compounded annually, under the terms of the Note.

44.    RCS's breaches have resulted in damage to Brooks.

## FOURTH CLAIM FOR RELIEF

### (Breach of Duty of Good Faith and Fair Dealing – against defendant RCS only)

### (In the alternative to the First and Second Claims for Relief)

45.    Brooks incorporates paragraphs 1 through 44 herein by reference.

46.    The Agreement carries an implied duty of good faith and fair dealing.

47.    When she signed the Agreement, Brooks reasonably expected that RCS would make reasonable and diligent efforts in good faith to pay the Note on the schedule established.

48.    RCS did not make reasonable and diligent good faith efforts to pay on the Note. Instead, RCS paid just long enough to secure Brooks' cooperation in obtaining a settlement of defendants' suit against their former lawyer.

49.    RCS breached its duty of good faith and fair dealing, resulting in damage to Brooks.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

50.    Brooks incorporates paragraphs 1 through 49 herein by reference.

51.    By failing to maintain the molds which serve as collateral for the Note, defendants have deprived Brooks of the opportunity to possess the property.

52.    Defendants' conversion has resulted in damage to Brooks in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Elder Financial Abuse)

53.    Brooks incorporates paragraphs 1 through 52 herein by reference.

54.      ORS 124.110(1)(a) provides that a person commits financial abuse when that person "wrongfully takes or appropriates money or property of a vulnerable person. . . ."

55.      Defendants wrongfully took Brooks' property and money via misrepresentation and conversion.

56.      At the time of the takings, Brooks was 65 years of age or older.  She is therefore a vulnerable person for purposes of ORS 124.110(1)(a), as provided by ORS 124.100(1)(a) and ORS 124.100(1)(e)(A).

57.      Defendants' wrongful takings have resulted in damage to Brooks.

## PRAYER FOR RELIEF

WHEREFORE, Brooks respectfully prays for judgment to be entered granting her relief as follows:

1.      Compensatory damages in an amount to be proven at trial;

2.      Statutory treble damages as authorized by ORS 124.100(2);

3.      Punitive damages in an amount to be proven at trial;

4.      Prejudgment interest;

5.      Plaintiff's costs and disbursements herein, including reasonable attorney fees, pursuant to ORS 124.100(2); and

6.      Such other and further relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Brooks hereby demands a Jury Trial on all questions so triable.

## RESERVATION OF RIGHT

Brooks reserves her right to amend or modify the allegations and claims herein on the basis of information received through discovery or otherwise.

**Page 9 -   COMPLAINT**

DATED this 31st day of July, 2014.

MARKOWITZ, HERBOLD, GLADE
  & MEHLHAF, P.C.


By:    */s/ Lawson E. Fite*
       Jeffrey M. Edelson, OSB #880407
       Lawson E. Fite, OSB #055573
       (503) 295-3085
       Of Attorneys for Plaintiff Gretchen Brooks