**Jeffrey M. Edelson, OSB No. 880407**
JeffEdelson@MarkowitzHerbold.com
**Molly K. Honoré, OSB No. 125250**
MollyHonoré@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax:  (503) 323-9105

Attorneys for Plaintiff Gretchen Brooks

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GRETCHEN BROOKS**, an individual,<br><br>                                  Plaintiff,<br><br>    v.<br><br>**HARLON RIP CASWELL**, an individual, **RIP CASWELL SCULPTURES, INC.**, an Oregon corporation d/b/a **CASWELL GALLERY**, an Oregon assumed business name, and **CASWELL PROPERTIES, LLC**, a Washington limited liability company,<br><br>                                  Defendants. | CV No. 3:14-cv-01232-AC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY MEMORANDUM** |

**INTRODUCTION**

Plaintiff Gretchen Brooks ("Brooks") opposes Defendants' Motion for Leave to File Reply Memorandum on the basis that (1) Defendants seek an extension in bad faith and via misrepresentations to counsel and this Court; and (2) Defendants' proffered Reply Memorandum does not address multiple issues of fact raised by Brooks' Response Memorandum, and is

**Page 1 -**   **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY MEMORANDUM**

therefore futile. Brooks therefore requests the Court deny Defendants' Motion. Furthermore, Defendants have waived their right to oral argument on the underlying Motion for Partial Summary Judgment re: Claim of Missing Molds pursuant to Local Rule 7-1(d)(4)(A), for failing to timely file their Reply Memorandum.

## MEMORANDUM OF LAW

**I.  Defendants' Motion should be denied because Defendants' misrepresented to Plaintiff and the Court their need for additional time to file their Reply.**

Brooks filed her Response to Defendants' Motion for Partial Summary Judgment re: Claim of Missing Molds on October 28, 2015. Defendants' Reply was due on November 11th. Although the Court struck the under-advisement date on October 27, 2015—before Brooks filed her Response—the parties' correspondence indicates they were following the required timeline for Motions under the rules. On November 2, 2015, Michael R. Seidl, counsel for Defendants, emailed Molly K. Honoré, counsel for Brooks, and requested an extension to file the Reply until November 13. (Decl. of Molly K. Honoré in Supp. of Pl.'s Resp. in Opp'n to Defs.' Mot. for Leave to File Reply Mem. ("Honoré Decl."), Ex. 1.) Ms. Honoré consented to the extension. (*Id*.) On November 12, Mr. Seidl again asked for a one-week extension for the Reply, to which Ms. Honoré again consented.[1] (*Id*.) Mr. Seidl never filed any motions for extensions with the Court, as required under Local Rule 7-1(f)(2).

Counsel for Brooks did not hear again from Defendants until December 2, 2015, when Mr. Seidl requested a scheduling conference with the Court. (Honoré Decl., Ex. 2 at 3.) Mr. Seidl did not include counsel for Brooks on the remainder of his communications with the Court, where he misrepresented that he determined the October 27 Order obviated the need for

---

[1] Between November 2 and November 12, Mr. Seidl also asked for Brooks' expert files. Mr. Seidl emailed the Court on November 5 asking for those documents to prepare his Reply. (Honoré Decl., Ex. 4 at 4-5.) He noted "if a formal motion is needed, I'd ask for a stay of the deadline for my Reply under Rule 56(f)." (*Id*., Ex. 4 at 5.) Paul Gale, the Courtroom Deputy, instructed Mr. Seidl to confer with Brooks' counsel and file an appropriate motion depending on that conferral. (*Id*., Ex. 4 at 4.) In response, Brooks' counsel noted their objection to the requested expert discovery. (*Id*., Ex. 4 at 3-4.) Mr. Seidl did not file any formal motion in November, as instructed by Mr. Gale. Instead, Mr. Seidl next emailed counsel for Brooks on November 12 and requested another extension on his Reply. (*Id*., Ex. 1.)

**Page 2 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY MEMORANDUM**

him to file his Reply or seek any extension from the Court. (*Id*., Ex. 4 at 1-2.) He had no such determination in mid-November, when he sought Plaintiff's consent for two extensions for the Reply Memorandum. (*Id*., Ex. 1.) And he had no such determination when Mr. Gale instructed him on November 5, 2015, to file an appropriate motion if he needed any stay or extension of any deadline for his Reply. (*Id*., Ex. 4 at 4.)

Mr. Seidl formed his opinion that the Court put the Motion for Partial Summary Judgment "in abeyance" pending the Court's ruling on Defendants' Motion to Dismiss based on language Mr. Gale used in a December 2, 2015 email to Mr. Seidl. (Honoré Decl., Ex. 4 at 2.) December 2 was well beyond the deadline for Defendants' Reply or any Motion for Extension. In response to Mr. Gale's email, without copying Brooks' counsel, Mr. Seidl opined for the first time that he had "interpreted the court's order putting the motion for summary judgment re: missing molds in abeyance as not requiring plaintiff's reply memorandum (which would have been due after the court's order). I'm assuming that if the court lifts that order I would then be allowed to file a reply." (*Id*., Ex. 4 at 2.) Had Mr. Seidl copied Brooks' counsel, counsel could have informed the Court that Mr. Seidl was—in his terms—engaged in "gamesmanship."

Mr. Seidl's delay in seeking leave from the Court to file his Reply is not "excusable neglect," as required under FRCP (b)(1)(B). He was aware of the deadline, communicated to the Court and opposing counsel regarding the deadline, yet chose not to file any timely request for an extension. *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974) ("We recognize that a finding of excusable neglect . . . requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period.")

Brooks objects to Defendants' ex parte communications with the Court and objects to Defendants' mischaracterization of the facts in his Motion. Defendants fabricated an excuse to the Court to buy themselves more time under the Rules to file a futile Reply brief that only serves as noise to drown out the genuine issues of fact—some undisputed—raised in Brooks' Response. Brooks is prejudiced by having to expend additional sums responding to Defendants'

Page 3 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
            FOR LEAVE TO FILE REPLY MEMORANDUM

counsel's mischaracterizations. And regardless of the prejudice to Brooks, the Court should not reward Defendants' disingenuousness by granting Defendants' Motion here.

## II. Defendants' Motion should be denied because Defendants' proffered Reply is futile.

As stated above, Defendants' Reply brief is futile and does not defeat Brooks' claims regarding the Brooks Molds as a matter of law. If Brooks' expert misidentified two of the Brooks Molds due to Defendants' inconsistent labeling system, that misidentification can be explored in expert discovery. However, that single issue does not eliminate the remaining facts or issues of fact regarding the Brooks Molds.

At this point in the litigation, it is undisputed that:

1. Defendant Rip Caswell had, in his possession, at least one of the Brooks Molds in May 2015, over three years after Defendants breached the Note in August 2012, and nearly a year after Brooks filed suit; and

2. Caswell lied to Brooks via communications from his lawyer, Andy Hahs, and in his deposition in August 2015, when he said he had surrendered all access to the molds.

There are also genuine issues of material fact over whether:

1. Five of the Brooks Molds were missing in September 2014, and subsequently returned by Defendants before Mr. Parks completed his inventory of the molds in May 2015;

2. Other molds showed visible deterioration;

3. Caswell used the Brooks Molds in his possession to cast other sculptures, effectively impairing the value of the Brooks Molds.

Those issues defeat Defendants' Motion for Partial Summary Judgment, and Defendants' Reply does nothing to address or resolve those issues.

### A. There is a genuine issue of material fact as to Plaintiff's Third Claim for Relief – Breach of the Settlement Agreement and Security Agreement.

There are genuine issues of fact as to whether Defendants breached the Settlement Agreement and Security Agreement by failing to properly deliver the Brooks Molds to Parks Bronze and leave them in Parks Bronze's possession and under Parks Bronze's oversight.

The Security Agreement and Settlement Agreement required Caswell to "deliver the molds to Parks Bronze" and "not remove the molds to any other location without the prior written consent of Secured Party." (Honoré Decl., Ex. 5 at 53, § 4.4 of the Security Agreement.)

The Settlement Agreement also required RCS to:

> "authorize and direct Parks Bronze, or any other foundry accepting physical custody of the Molds, to (i) immediately notify Brooks in the event that RCS attempts to re-take custody of the Molds, inquires about placing an order to cast a sculpture from the molds, or places an order relating to the Molds; (ii) provide copies of all invoices for casting sculptures from the Molds to Brooks on a monthly basis; and (iii) provide Brooks (or her designated agent) with access to view and inspect the Molds at any time during business hours."

(*Id*., Ex. 4 at 12, § 8(d) of the Settlement Agreement.)

The purpose of Section 8(d) was to eliminate any need for Brooks to communicate with Caswell about the Brooks Molds. Section 8(d) required Caswell and RCS to put Parks Bronze—a neutral third party—in the position to have complete control over the Brooks Molds and to be able to notify Brooks if Caswell or RCS interfered with Brooks' rights. But, by Caswell's admission, Caswell never obtained that arrangement with Parks Bronze, because Caswell never sufficiently delivered the Brooks Molds to Parks Bronze. He kept the Brooks Molds in his own shipping container, intermingled with his own molds, and subject to a labeling system that no one but he could understand.

How would Parks Bronze have been able to "immediately notify Brooks in the event that RCS attempts to re-take custody of the Molds" if RCS never clearly labeled the Brooks Molds? If RCS never otherwise identified the Brooks Molds to Parks Bronze? If RCS kept the Brooks Molds in an unlocked storage container, not subject to any security precautions, and allowed Caswell entry to and from the container at his whim?

The answer to those questions is that Caswell never complied with Section 8(d), thereby depriving Brooks of the rights, for which she specifically bargained under the Settlement Agreement. Caswell made multiple promises in the Settlement Agreement that he breached. He promised to pay Brooks $650,000. He promised to deliver the Brooks Molds to the possession

Page 5 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
           FOR LEAVE TO FILE REPLY MEMORANDUM

and oversight of a neutral third party, as security for his promise to pay $650,000. Now Brooks has neither the money promised by Caswell, nor the arrangement she bargained for regarding the storage of and access to that collateral.

Caswell never complied with the Settlement Agreement because he never made sufficient delivery of the Brooks Molds to Parks Bronze. Had he sufficiently transferred oversight of the Molds to Parks Bronze, Brooks could have easily contacted Parks Bronze and asked them to do an inventory of the Brooks Molds in their possession. Had all the Brooks Molds been present and accounted for—as required under the Settlement Agreement—there would not now be any question as to the status of the Brooks Molds over time.

Because Defendants initially breached Section 8(d) of the Settlement Agreement, there are now genuine issues of fact over whether Defendants retained certain Brooks Molds beyond September 21, 2011—when they were due at Parks Bronze under the Settlement Agreement— and beyond August 2012, when Defendants relinquished all rights to the Brooks Molds by breaching the Note.

### B. Plaintiff has established, as a matter of law, as to Plaintiff's Fifth Claim for Relief, that Defendants converted at least one of the Brooks Molds.

Defendants' proffered Reply brief does not address the fact that Defendants converted at least one of the Brooks Molds, and likely five more.[2] Caswell admits that he had in his possession one of the Brooks Molds beyond both the date of the Settlement Agreement and the date of Defendants' default under the Note. Caswell may have denied that he removed five others; however his testimony is refuted by Mr. Pettelle's, who could not find those five molds during his September 2014 inspection. Defendants' admission establishes that Brooks has prevailed on her Fifth Claim for Relief.

---

[2] Plaintiff's Fifth Claim for Relief pleads a conversion claim against Defendants for "failing to maintain the molds," which therefore "deprived Brooks of the opportunity to possess the property." (Am. Compl. ¶ 62.) Defendants, as they note, have been on notice from the beginning of this lawsuit that Brooks' claim also encompassed missing Brooks Molds. Plaintiff therefore believes that her Fifth Claim for Relief also covers any molds that were never delivered to Parks Bronze. Plaintiff believes she has complied with federal notice pleading requirements on her Fifth Claim for Relief; however, if the Court prefers, Plaintiff can re-plead that claim with more clarity.

Page 6 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
            FOR LEAVE TO FILE REPLY MEMORANDUM

To the extent there are issues of credibility among the various declarants in this case, only one person has affirmatively perjured himself before the Court. Defendants' proffered Reply glosses over Caswell's perjury during his August 2015 deposition, as if it is a nonissue in this litigation. But Caswell's dishonesty goes to his credibility in this case, and therefore shades all representations he has made to the Court.

Defendants' reference to *Davis v. F.W. Financial Services, Inc.*, 260 Or. App. 191, 317 P.3d 916 (2013) does not support Defendants on the facts here. *Davis* involved a dispute between two competing creditors arguing over accounts receivable of a debtor. Davis, a judgment creditor, garnished the accounts receivable of a debtor in which F.W. Financial Services ("FWFS") had a perfected security interest. *Id*. at 916. Both parties sought declarations from the trial court as to whose interest was superior. *Id*. The trial court determined FWFS had the superior interest and Davis had converted the funds by garnishing the accounts and refusing to return the funds to FWFS. *Id*. The Court of Appeals upheld the trial court on the conversion claim, but first noted that *Davis'* initial garnishing of the accounts was not conversion because FWFS had not yet exercised its rights in the collateral. *Id*. at 926. Davis, as a judgment creditor, had a lawful right to the funds and in the absence of any claim from FWFS, was not interfering with the rights of another. *Id*. The Court of Appeals concluded that FWFS still prevailed on its claim for conversion, however, when Davis refused to return the funds after FWFS made a demand. *Id*.

*Davis* does not establish that a demand is required as an element of conversion. Rather, a demand and refusal is necessary when "a person is rightfully in possession of property of another, and is neither asserting title to it nor exercising such dominion over it as is inconsistent with the right of the owner . . . for in such a case there is no conversion until there is a demand and a refusal, and the demand ordinarily becomes necessary before the rightful possession is transformed into a wrongful possession." *Daniels v. Foster & Kleiser*, 95 Or. 502, 506-07, 187 P. 627, 628 (1920).

**Page 7 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY MEMORANDUM**

Demand and refusal is not necessary, in a case like this one, when a debtor defaults on a promise to a secured creditor, and then uses the collateral in violation of the secured creditor's rights. *Oregon Bank v. Fox*, 73 Or. App. 612, 699 P.2d 1147 (1985), a case cited in *Davis*, involved these exact facts. *Oregon Bank* involved a fight between a debtor and a secured creditor over accounts receivable. The debtor defaulted, and before the parties executed an "Agreement in Lieu of Foreclosure," the debtor transferred sums to a separate bank account. *Id*. at 1148-49. The creditor sued the debtor for conversion. *Id*. at 1149. The debtor claimed the creditor had no rights in the accounts until the Agreement in Lieu of Foreclosure was executed, because it was only then that the creditor made a demand for the collateral. *Id*. The court rejected the debtor's argument. The court determined the creditor had right to possession of the collateral immediately upon default, and that when the debtor drew checks on the bank account after default, he converted those funds. *Id*. The debtor's use of the collateral "was in violation of the [creditor's] right to take immediate possession of [the collateral] and was a conversion in and of itself, without prior demand and refusal." *Id*. at 1150.

As in *Oregon Bank*, Brooks was not obligated to make a demand on Defendants of the Brooks Molds in order to sustain a claim for conversion. Brooks had an immediate right to take possession of the Brooks Molds when Defendants defaulted on the Note. (Honoré Decl., Ex. 5 at 55, § 7.1 of the Security Agreement.) Defendants converted the Fighting Back mold by possessing it beyond the date of Defendants' breach of the Note.

Even if a demand and refusal were necessary, Brooks made a demand for the collateral when she filed suit. Defendants, in spite of that demand, withheld collateral from Brooks until nearly a year into the lawsuit. As Brooks noted in her previous brief, Defendants' late attempt to defeat the conversion claim by returning the Brooks Molds (but still not making a proper delivery to Parks Bronze) does not work. *See Preble v. Hanna*, 117 Or. 306, 318-19, 244 P. 75, 79 (1926).

### C. There are issues of fact over Defendants' use of the missing molds.

As noted throughout this case, Defendants—specifically, Caswell—has a propensity to be untruthful. To the extent he has used any of the individual Brooks Molds or parts of those Brooks Molds for other sculptures, he has impaired the value of the Brooks Molds. Caswell claims he has not. Brooks believes this is a disputed issue of material fact.

### D. There are issues of fact over the condition of the Brooks Molds.

Defendants' Reply does not even address the disputed issue of fact regarding the condition of the Brooks Molds other than the two Defendants claim were misidentified. As noted in Brooks' Response brief, more work needs to be done to determine the extent of the damage to the remaining Brooks Molds. The condition of those Brooks Molds is an issue for experts and will be explored further in expert discovery.

### E. Even if the Court considers Defendants' late brief, it should not allow Defendants to submit new evidence.

As Brooks' counsel noted in earlier communications to Defendants and the Court, Defendants prematurely filed their Motion for Partial Summary Judgment re: Claim of Missing Molds ahead of the deadline for expert disclosures. (Honoré Decl., Ex. 4 at 3-4.) Once Brooks identified genuine issues of fact sufficient to defeat Defendants' Motion, Defendants then scrambled to identify new evidence and seek to submit it in connection with their Reply.[3] Brooks' counsel suggested to Defendants in November that Defendants should withdraw their Motion for Partial Summary Judgment and refile at the close of expert discovery, if they believed they had grounds to do so. (*Id*., Ex. 4 at 4.) A Motion filed at that time would be able to fully address any issues relating to the condition of the Brooks Molds and processes taken to inventory the Brooks Molds. Defendants rejected that offer.

All Defendants have done, in connection with this Motion and proffered Reply, is to establish that there is an issue of fact regarding the two significantly-deteriorated molds. Those

---

[3] Defendants did not attach any declaration of Mr. Caswell in connection with their Motion and the supporting Declaration of Michael R. Seidl, so Brooks does not know exactly what the "Caswell Decl." cited to in the proffered Reply will say.

**Page 9 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
            FOR LEAVE TO FILE REPLY MEMORANDUM**

issues of fact will be explored during expert discovery. Defendants filed this Motion and their Motion to Compel in an attempt to rectify their ill-timed Motion for Partial Summary Judgment. To allow Defendant to proceed in this manner—to file a bare-bones brief, requiring Brooks to submit evidence ahead of expert discovery, and then to nitpick that evidence in a late-filed Reply—distorts the purposes of the Civil Rules regarding motion practice. The Court should not allow Defendants to manipulate the Court rules and schedule in such a way that deprives Brooks of a chance to respond meaningfully to dispositive motions.

## CONCLUSION

Brooks respectfully requests the Court deny Defendants' Motion for Leave to File a Reply Memorandum. Defendants' proffered Reply brief is only an attempt to confuse the issues before the Court and does not further Defendants' Motion for Partial Summary Judgment re: Claim of Missing Molds. Furthermore, Defendants' failure to obtain any timely extension from the Court constitutes a waiver of Defendants' right to oral argument on the underlying Motion for Summary Judgment, pursuant to LR 7-1(d)(4)(A).

DATED this 15th day of January, 2016.

MARKOWITZ HERBOLD PC

By: *s/ Molly K. Honoré*
Jeffrey M. Edelson, OSB No. 880407
JeffEdelson@MarkowitzHerbold.com
Molly K. Honoré, OSB No. 125250
MollyHonoré@MarkowitzHerbold.com
(503) 295-3085
Of Attorneys for Plaintiff

BROOCA\500981