UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GRETCHEN BROOKS, an individual, | Case No.: 3:14-cv-1232-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| HARLON RIP CASWELL, an individual, RIP CASWELL SCULPTURES, INC., an Oregon corporation d/b/a CASWELL GALLERY, an Oregon assumed business name, CASWELL PROPERTIES, INC., a Washington limited liability company, and DOES 1-5, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Gretchen Brooks ("Brooks") filed this action against defendants Harlon Rip Caswell

("Caswell"), Rip Caswell Sculptures, Inc., dba Caswell Gallery ("Caswell Sculptures"), and Caswell Properties, LLC ("Caswell Properties")(collectively "Defendants") seeking damages related to Defendants' alleged wrongful conduct with regard to the settlement of a prior lawsuit (the "Settlement"). Brooks's claims were dismissed voluntarily or through motion practice, and the court granted Brooks's motion for summary judgment on Caswell Sculptures's counterclaim under OR. REV. STAT. 79.0625 in an Opinion and Order dated December 28, 2016 (the "Counterclaim Opinion"). The court subsequently entered a judgment dismissing the entire action with prejudice. Defendants now move to alter or amend the Counterclaim Opinion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and seek sanctions against Brooks for false representations. Additionally, Brooks seeks reasonable attorney fees and costs incurred in defending the counterclaim pursuant to OR. REV. STAT. 79.0625(3)(c).[1]

The court finds it erred in failing to view in Defendants' favor the evidence relating to Brooks's ability to inspect the collateral, but that its holdings with regard to the viability of Defendants' counterclaim under OR. REV. STAT. 79.0625 were not clearly in error or manifestly unjust, and the allegedly false statements contained in the Brooks' declaration are not sanctionable. Additionally, Brooks is not entitled to an award of attorney fees under the relevant factors set forth in OR. REV. STAT. 20.075(1). Accordingly, Defendants' motion to amend the Counterclaim Opinion is granted in part and denied in part and Brooks's motion for attorney fees is denied.[2]

---

[1]The parties requested oral argument on the pending motions. The court finds the motions appropriate for disposition without oral argument pursuant to LR 7-1(d)(1) and denies these requests.

[2]The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

*Background*

Defendants' motion for reconsideration attacks the court's characterization of evidence presented by the parties in its various summary judgment rulings. Specifically, Defendants' object to the court's view of the evidence addressing Brooks's ability to inspect statue molds serving as collateral (the "Molds") for a promissory note executed by Caswell Sculptures in favor of Brooks (the "Note"). Accordingly, a review of the evidence, as well as the court's summary of such evidence, is necessary.

I. The Missing Molds Opinion

On March 14, 2016, the court granted Defendants' motion for summary judgment on Brooks's claim for breach of contract, in which she alleged Defendants failed to deliver and maintain the Molds in accordance with the terms of the Settlement (the "Missing Molds Opinion"). *Brooks v. Caswell*, Case No. 3:14-cv-01232-AC, 2016 WL 1056977, *5 (D. Or. March 14, 2016)("*Brooks I*"). The court also granted summary judgment in favor of Defendants on the entirety of Brooks's claim for conversion, and on Brooks's fraud, negligent misrepresentation, and elder financial abuse claims to the extent they relied on allegations of missing or damaged Molds. *Id*. at *7.

> Relevant, at least in part, to the Missing Molds Opinion was the factual finding that:
>
> Brooks did not attempt to access the Molds, either on her own or through an agent, until September 2014, (Brooks Dep. 150:9-16), when she hired Todd Pettelle, Owner and Operator of another bronze casting foundry, ("Pettelle"), to visit Parks Bronze to inventory and visually inspect the Molds, (Pettelle Decl., ECF NO. 111, ¶¶ 2, 3; Pl.'s Resp. To Defs.' First Set of Interrogs., at 9).

*Id*. at *2. The court later stated: "Brooks concedes she never attempted to access the Molds, let alone sell or profit by them in any way, until September 2014, two years after she was legally able to do so" and "[t]he mere fact Caswell may have retained access to the Molds at Parks Bronze does not

necessarily suggest Brooks was ever denied access to them, and no evidence of such exists." *Id*. at *5, *7.

The excerpt from the Brooks deposition cited by the court provided:

> Q. Now, the work product – let me make sure for purposes of the record that I'm clear: Did you ever yourself, personally, ever go out to Parks Bronze at any time and look at the molds?
>
> A. I've never been in Enterprise.
>
> Q. Okay. So I take in the answer is –
>
> A. To my knowledge.
>
> Q. I take it the answer is no?
>
> A. No.
>
> Q. Before you filed this complaint, did you ever ask anyone to go out to Parks Bronze and inspect the Molds?
>
> A. No.

(Seidl Decl. dated August 21, 2015, ECF No. 96 ("Seidl 2015 Decl."), Ex. 4 at 2.)

The interrogatory and response referenced by the court were:

> **INTERROGATORY NO. 10**: Following execution of the Settlement Agreement, state the date or dates that you and/or your agents physically inspected the molds that served as collateral under the Security Agreement. If you retained agents to conduct any inspections, state the name, address, and telephone number of each agent.
>
> **ANSWER**: Brooks objects to this interrogatory to the extent it seeks information protected by attorney-client privilege or the work product doctrine. Subject to, and without waiving, the foregoing general and specific objection, Brooks responds that an inspection of the molds was conducted on her behalf on September 9, 2014. Brooks objects to the remainder of this interrogatory in full as it seeks information protected by Federal Rule of Civil Procedure 26(b).
>
> Discovery is ongoing and Brooks reserves the right to amend or supplement

her responses as appropriate.

(Seidl 2015 Decl. Ex. 8 at 2.)

The relevant portions of the Pettelle declaration referred to by the court described Pettelle's experience with statue molds, his retention by Brooks to inspect the Molds, and his visit to Parks Bronze ("Parks") on September 9, 2014, to complete an inventory and visual inspection of the Molds. (Pettelle Decl. dated October 26, 2015, ECF No. 111, at ¶¶ 2-4.)

In support of her opposition to Defendants' summary judgment motion, Brooks offered a January 29, 2013 email from Defendants' counsel Andrew D. Hahs ("Hahs") to Brooks's counsel Laura J. Walker ("Walker") (the "Hahs Email") stating:

> Laura,
>
> Parks Foundry knows about Gretchen's interest in the molds. Here is what Rip says about Gretchen's person inspecting and taking them:
>
>> Yes they can call Parks foundry and they will pull the molds for them. they are scattered in several containers and locations. best to give them the list and time to locate them all.
>
> Hope this helps.
>
> Andy

(Honore Decl. dated October 28, 2015, ECF No. 109, Ex. 3.)

Based on this evidence, the description and characterization of the facts in the Missing Molds Opinion were primarily supported by the record. However, the statement "Brooks did not attempt to access the Molds" may have been a bit overreaching. In fact, the evidence established Brooks expressed an interest in inspecting the Molds in the Hahs Email, but never traveled to Enterprise to look at the Molds nor asked someone else to inspect the Molds on her behalf before September 9,

2014.

## II. The Summary Judgment Opinion

Seven months later, the court issued an opinion addressing Defendants' motion for summary judgment on Brooks's remaining claims (the "Summary Judgment Opinion"). *Brooks v. Caswell*, Case No. 3:14-cv-01232-AC, 2016 WL 6305980 (D. Or. Oct. 27, 2016)("*Brooks II*"). The court found Brooks "failed to establish Defendants made any false representations with regard to their duty to pay or the value of the collateral, a breach of the statutory duty of good faith with regard to terms of the settlement documents, or improper motive at the time of negotiation and execution of the settlement agreement." *Id*. at *1. Consequently, the court granted Defendants' motion for summary judgment. *Id*. at *13.

In their motion for summary judgment, Defendants represented Brooks's claims rested on "two fundamental fallacies," one of them being "that defendant RCS did not perform its obligations under the Settlement Agreement." (Defs.' Mots. for Summ. J., ECF No. 143 ("Defs.' Mots."), at 3.) Defendants claimed "there was no breach [of the Settlement Agreement] because defendant RCS fully performed when it attempted to convey the collateral pursuant to the Security Agreement." (Defs.' Mots. at 3.) In her opposition briefing, Brooks noted the Settlement required Defendants to "authorize and direct Parks Bronze to . . . provide Brooks (or her designated agent) with access to view and inspect the Molds at any time during business hours." (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ J., ECF No. 159 ("Pl.'s Resp."), at 12.) Brooks asserted that contrary to her "express rights . . . to access and view the Molds at any time, Caswell's attorneys demanded Brooks sign a surrender agreement containing a release prior to viewing the [M]olds." (Pl.'s Resp. at 13.) Accordingly, the question of whether Defendants' conduct breached the terms of the Settlement was identified as a

relevant issue by both parties in their summary judgment briefing.

In support of their motion for summary judgment, Defendants offered evidence of various communications between Hahs and Walker in the months following Defendants' default on the Note. In an August 6, 2012 email, Hahs advised Walker that Defendants would not be making payments under the Note and would "cooperate" in Brooks gaining possession of the Molds. (Hahs Decl. dated December 10, 2014, ECF No. 146 ("Hahs 2014 Decl."), Ex. E at 1.) In an email dated October 4, 2012, Hahs informed Walker of Defendants' intent to remove their statue molds from Parks leaving only the Molds. (Hahs 2014 Decl. Ex. F.) Hahs recommended Walker contact Parks to make storage arrangements if Brooks intended to continue storing the Molds at Parks, and also expressed a desire to finalize a surrender agreement. (Hahs 2014 Decl. Ex. F.)

In his declaration dated December 10, 2014 (the "Hahs Declaration"), Hahs represented that on January 28, 2013, Walker indicated she would prepare a surrender agreement detailing the transfer of the Molds, a draft of which Hahs received on February 18, 2013. (Hahs 2014 Decl. ¶¶ 16, 17.) Subsection six of the surrender agreement provided that "Debtor hereby authorizes Parks Bronze, or such other party in possession of the [M]olds . . . , to deliver the [M]olds to the Secured Party or her agent." (Hahs 2014 Decl. Ex. G at 4.) Hahs marked the draft with requested changes and returned it to Walker the same day. (Hahs 2014 Decl. ¶ 17.) Among Hahs's requested changes were the inclusion of the language "Secured Party is willing to accept surrender of the collateral in full satisfaction of the Note and Debtor is willing to surrender the collateral" and the substitution of the term "surrender" for the term "deliver" in subsection six. (Hahs 2014 Dec. Ex. G at 6, 7.) Hahs and Walker did not communicate again until April 8, 2013, when Walker confirmed Brooks's intent to retain her lien on the Molds and take possession of them once the terms for transfer of possession

could be agreed upon. (Hahs 2014 Decl. ¶ 19.)

In support of her opposition briefing, Brooks offered Walker's memory of the negotiation of the surrender agreement – "Mr. Hahs – on behalf of RCS – responded to my draft by demanding the surrender agreement include a release of liability. Ms. Brooks had not yet inspected the [M]olds prior to RCS' demand. Ms. Brooks did not agree to the release of the liability demanded by RCS." (Walker Decl. dated July 14, 2016, ECF No. 163, ¶ 4.) Additionally, Brooks herself represented in her July 15, 2016 declaration (the "Brooks Declaration") that:

> After Caswell defaulted on his obligations to pay me, in early 2013, I made an attempt to have Todd Pettelle, an expert in bronze sculptures and foundries and someone I trust, go and count the [M]olds and give an initial opinion as to their condition. As I understood it, I had the right to inspect the [M]olds at any time under the settlement agreement. Contrary to that understanding, Caswell's attorneys required me to prepare a surrender agreement containing a release of liability in order to have access to the [M]olds. Because I did not want to waive any rights I had under the settlement agreement, I did not sign the surrender agreement and counsel instructed Mr. Pettelle not to inspect the [M]olds at that time.

(Brooks Decl. dated July 15, 2016, ECF No. 161, ¶ 20.)

In the Summary Judgment Opinion, the court summarized the evidence presented to it and stated that "Brooks was unwilling to release Defendants from liability under the Note before having the opportunity to inspect the Molds and Caswell was unwilling to allow Brooks access to the Molds until a collateral surrender agreement releasing Defendants from liability had been signed." *Brooks II*, 2016 WL 6305980 at *6. This statement is supported by Walker's representation that Brooks did not inspect the Molds prior to February 18, 2013, when Hahs requested changes to the surrender agreement, and Brooks's statement that Defendants' required her to agree to release Defendants from their liability under the Note before allowing her to have access to the Molds. Moreover, the statement is not contradicted by any evidence then before the court and was not contested by

Defendants in their reply briefing or through a motion for reconsideration at that time.

III. Counterclaim Opinion

Finally, the court granted Brooks's motion for summary judgment on Caswell Sculptures's counterclaim under Oregon's Uniform Commercial Code (the "UCC"), specifically OR. REV. STAT. 79.0625, in the Counterclaim Opinion. In its counterclaim, Caswell Sculptures alleged Brooks "breached her duty of good faith by: (1) filing this lawsuit in an attempt to avoid the terms of the Note; and (2) failing to immediately accept the Molds as the sole remedy for breach of the Note." *Brooks v. Caswell*, Case No. 3:14-cv-01232-AC, 2016 WL 7473207, at *5 (D. Or. Dec. 28, 2016)("*Brooks III*"). The court found Brooks's filing of the lawsuit complied with the UCC's good faith standard for four reasons: (1) she honestly believed she had a valid claim for fraud and misrepresentation based on Defendants' intent to pay the Note and the value of the Molds at the time she filed the lawsuit; (2) she filed the lawsuit without the opportunity to determine the Molds had been delivered to Parks and properly maintained; (3) not all of the Molds, in fact, were timely transferred to Parks, and (4) it was commercially reasonable for her to challenge the terms of the Note and Security Agreement where evidence supporting such challenge existed. *Id*. at *7-*8. The court further found Chapter 9 of the UCC imposes no requirement on secured creditors to take possession of collateral in a timely manner and, consequently, Caswell Sculptures could not assert a viable claim under OR. REV. STAT. 79.0625. *Id*. at *11.

Brooks did not offer additional evidence in support of her motion for summary judgment but relied on the relevant complaint and answer, as well as the court's prior summary judgment ruling. Accordingly, the court relied on "declarations and evidence associated with motions for summary judgment previously filed by the parties as well as those filed with the present motion" in describing

the underlying facts relevant to Brooks's summary judgment motion on Caswell Scupltures's counterclaim. *Id*. at *1 n.2. The court again noted the evidence established "Brooks was unwilling to release Defendants from liability under the Note before having the opportunity to inspect the Molds and Caswell was unwilling to allow Brooks access to the Molds until a collateral surrender agreement releasing Defendants from liability had been signed." *Id*. at *3. The court also recognized in a footnote that "Defendants dispute Brooks's representation that she was denied access to the Molds for the first time in the declaration of Andrew Hahs dated November [2]9, 2016, and filed with the court in opposition to Brooks's motion for summary judgment on Defendants's counterclaim." *Id*. at *4 n.3.

In his declaration dated November 29, 2016, Hahs refuted the court's prior summary of the facts, asserting such summary "is blatantly false. At no time did we deny Ms. Brooks or her representatives the opportunity to inspect the collateral. I do not recall Ms. Walker ever requesting such an inspection." (Hahs Decl. dated November 29, 2016, ECF No. 192 (Hahs 2016 Decl."), ¶ 24.) Hahs further explained that if Brooks relied upon Hahs's requested changes to the surrender agreement as evidence Defendants were unwilling to allow Brooks access to the Molds, she "is obviously misstating what occurred." (Hahs 2016 Decl., ¶ 27.) In its opposition to Brooks's motion for summary judgment, Caswell Sculptures sought to correct the factual error, claiming "[t]here is simply no evidence that Brooks was precluded from inspecting the molds, or precluded from gaining possession of the molds under any terms other than the agreement she signed and her remedies under the UCC. " (Def. RCS' Resp. to Pl.'s Mot. For Summ. J., ECF No. 190 ("Def.'s Resp."), at 5.) Caswell Sculptures conceded Brooks never inspected the Molds, and it relied on this fact in arguing Brooks had no basis to allege Defendants failed to transfer or maintain the Molds. (Def.'s Resp. at

10.)

*Discussion*

I. Defendants' Motion to Amend Counterclaim Opinion

Defendants ask the court to amend the Counterclaim Opinion, arguing Brooks falsely represented in the Brooks Declaration that Defendants refused to provide her the opportunity to inspect the Molds. Defendants assert the court improperly relied on this statement in finding Defendants deprived Brooks access to the Molds, which was a violation of the Settlement. Defendants claim the court's reliance on the false representation resulted in clear error and manifest injustice necessitating the issuance of an amended opinion, even if the court does not alter the ultimate result. Additionally, Defendants seek sanctions against Brooks for the false representations found in the Brooks Declaration.

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to file a motion to alter or amend a judgment within twenty-eight days of the filing of such judgment. Rule 59(e) does not articulate a test to consider when a court should reconsider a prior decision, but courts have determined that reconsideration under Rule 59(e) is "appropriate if the district court '(1) is presented with newly discovered evidence, (2) committed a clear error or the initial decision was manifestly unjust, or (3) if there was an intervening change in controlling law.'" *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003)(quoting *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Clear error "is a very exacting standard" requiring a court to consider a decision "as more than just maybe or probably wrong; it must be dead wrong." *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012) (internal quotation marks and citations omitted.)

The only direct evidence of Brooks's ability to inspect the Molds before the court at the time it issued the Summary Judgment Opinion was the Brooks Declaration. Other evidence offered, such as the Hahs Email and Walker's July 14, 2016 declaration, established Brooks expressed an interest in inspecting the Molds in January 2013, but had not inspected the Molds as of February 18, 2013. The Hahs Declaration summarized the drafting of the surrender agreement in February 2013, as well as Defendants' desire to condition surrender of the Molds to Brooks on Brooks's concession such surrender would be in full satisfaction of the Note.

In considering evidence presented in the context of a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). In other words, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, the court's description of the evidence in this manner does not result in binding findings of fact. Trials court are not to weigh the evidence in a summary judgment record, but merely to pinpoint undisputed facts supporting summary judgment while viewing all facts and inferences most favorably to the nonmoving party. *Swarner v. United States*, 937 F.2d 1478, 1481 (9th Cir. 1991).

Viewing the evidence in a light most favorable to Brooks, the nonmoving party, the court found the evidence established that Defendants conditioned Brooks's access to the Molds on her releasing Defendants from liability under the Note, thereby depriving her of the opportunity to inspect the Molds prior to executing the surrender agreement. Defendants did not object to this view of the evidence at the time the Summary Judgment Opinion was entered and, realistically, do not object to such view now. Rather, Defendants object to the court's adherence to this view of the

evidence in light of the new evidence offered in opposition to Brooks's motion for summary judgment on Defendants' counterclaim. Upon reconsideration, the court finds Defendants' argument has merit.

In the Counterclaim Opinion, the court relied on its previous summary of the relevant evidence and acknowledged, in a footnote, that Defendants had offered new evidence contradicting Brooks's representation she was deprived access to the Molds. The evidence Defendants offered raised a genuine issue of material fact with regard to Brooks's ability to inspect the Molds. Because the court was considering Brooks's motion for summary judgment, it should have viewed the disputed facts in a light most favorable to Defendants, not Brooks. Accordingly, the court should have considered as true Hahs's statement that Defendants never denied Brooks an opportunity to inspect the Molds. But, even if the court had considered the evidence in this light, it would not have altered its ultimate conclusion that Brooks filed this lawsuit in good faith or that Defendants failed to state a claim under OR. REV. STAT. 79.0625.

The court identified four reasons supporting its finding that Brooks filed her lawsuit in good faith; Defendants' failure to provide Brooks an opportunity to inspect the Molds was only one. The court's alternative grounds were not challenged by Defendants, are not affected by the court's failure to view the evidence in Defendants favor, and continue to justify the finding Brooks honestly believed she had a valid claim for misrepresentation with regard to the Settlement and for improper handling of the Molds. Accordingly, the court's determination that Brooks filed her lawsuit in good faith and in a commercially reasonable manner was proper. The court's failure to view the genuine issue of material raised by Hahs's statement may have been clear error, but the record still supports the conclusion that Brooks's filing of this action was commercially reasonable and in good faith and,

thus, was not manifestly unjust.

Defendants ask the court to sanction Brooks for filing a false declaration. Defendants concede the court lacks the ability to issue sanctions under Rule 11 in light of the issuance of a final judgment but assert the court retains inherent authority to sanction misconduct of parties. Defendants argue the timing of the Brooks declaration was suspect, it was not supported by other evidence in the record, and Brooks's counsel never offered additional evidence to corroborate Brooks's statement when provided the opportunity.

"An award of sanctions under . . . the district court's inherent authority requires a finding of recklessness or bad faith." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Viewing the Brooks Declaration under this standard, the court finds sanctions are not warranted. In her declaration, Brooks represented she believed Defendants would not allow her access to the Molds until she agreed to release Defendants from liability under the Note. The Hah Email establishes Brooks requested access to the Molds in early 2013. While Hahs indicated Parks was aware of Brooks's interest in the Molds, he suggested Brooks give Parks notice of her desire to inspect them and allow time to locate all the Molds. Thereafter, Walker drafted a surrender agreement and Hahs requested changes which authorized Parks to surrender the Molds to Brooks only if Brooks was willing to accept surrender of the Molds in full satisfaction of the Note. The parties obviously construed the language of the proposed changes, and specifically the term "surrender," differently. Brooks viewed the language to mean Parks would allow her access to the Molds only if she agreed accepting such access would fully satisfy the Note. Defendants construed the language differently, that Brooks could not possess or take ownership of the Molds until she released Defendants from liability under the Note. Both interpretations are arguably reasonable and consistent with the language of the

surrender agreement. Brooks's offering her interpretation of the surrender agreement language in the Brooks Declaration does not make the declaration false – it merely expresses her understanding of Defendants' requirements under Hahs's proposed changes to the surrender agreement.

The Brooks Declaration contained evidence that Defendants deprived Brooks of an opportunity to inspect the Molds creating, at the least, a genuine issue of material fact on this issue. Consequently, Brooks's counsel's subsequent failure to offer additional evidence in support of this understanding in response to Defendants' request does not establish Brooks made a knowingly false representation. Additionally, Defendants make much of Walker's inability to remember conversations related to the inspection of the Molds or the negotiation of the surrender agreement. However, in his November 2016 declaration, Hahs refutes Brooks's statement he denied her the opportunity to inspect the Molds and states "I do not recall Ms. Walker ever requesting such an inspection." The Hahs Email makes clear Brooks expressed an interest in inspecting and taking the Molds, and that Hahs was aware of such interest. Consequently, even though Hahs may not remember, the evidence establishes Walker made at least one request to allow Brooks access to the Molds. An individual's inability to remember a conversation does not necessarily lead to a conclusion the conversation did not occur.

Finally, Defendants contend the Counterclaim Opinion implies the court decided not to exercise its discretion under OR. REV. STAT. 79.0625, and asks the court to state this decision explicitly. Specifically, Defendants ask the court to issue an amended opinion expressly finding that relief under OR. REV. STAT. 79.0625 is not warranted under the circumstances of this case. Defendants seek to avoid Brooks claiming in future litigation the court made express finding of facts. The court agrees it is not entitled to make findings of fact at the summary judgment stage. However,

the court may view the evidence before it, accept the undisputed facts as true, and view the disputed facts in a light most favorable to the non-moving party. With the exception of the newly created issue of fact with regard to Brooks's ability to access the Molds for inspection, the evidence summarized by the court was undisputed. Accordingly, Defendants' concern that Brooks would offer the court's summary of the evidence as findings of fact is unwarranted. Moreover, the court did not exercise its discretion in granting Brooks's summary judgment on Defendants' counterclaim. Rather, the court applied the undisputed evidence to find, under the UCC standard, Brooks acted in good faith and in a reasonably commercial manner in filing this lawsuit. Additionally, the court found, as a matter of law, that Chapter 9 of the UCC does not impose a requirement on a secured creditor to take possession of collateral in a timely manner and Caswell Sculptures does not have a viable action under OR. REV. STAT. 79.0625. Defendants have failed to convince the court such conclusions were in clear error or manifestly unjust.

II. Brooks's Motion for Attorney Fees

Brooks seeks an award of attorney fees and costs incurred in successfully defending Caswell Sculpture's counterclaim. Brooks relies on the provision found in OR. REV. STAT. 79.0625(3)(c), which provides: "[t]he court may award reasonable attorneys fees to the prevailing party in an action under this subsection." Defendants argue the language of this provision unambiguously limits the recovery of attorney fees to actions brought under OR. REV. STAT. 79.0625(3). Because Brooks did not prevail in a claim for damages under OR. REV. STAT. 79.0625(3), Defendants assert she is not entitled to recover attorney fees. Brooks contends the counterclaim expressly alleged a claim for damages under OR. REV. STAT. 79.0625(3). Consequently, she argues her success in defending that claim allows her to recover attorney fees. The court does not need to resolve this issue because it

finds Brooks is not entitled to discretionary attorney fees under the relevant factors in any event.

In diversity actions, federal courts look to state law to determine the propriety and reasonableness of a request for attorney fees. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). Under Oregon law, a request for attorney fees is governed by OR. REV. STAT. 20.075, which mandates a two-step inquiry. The court first considers the factors listed in OR. REV. STAT. 20.075(1), which relate primarily to parties' behavior during the litigation, particularly with regard to attempts to reach settlement, to determine whether an award for attorney fees is warranted where such award is discretionary.[3] If the court finds an award of attorney fees is appropriate, it then calculates the amount of such award, considering the OR. REV. STAT. 20.075(1) factors in conjunction with the factors enumerated in OR. REV. STAT. 20.075(2), which relate primarily to the quality of the legal services at issue.

"While courts need not make lengthy or complex findings under ORS 20.075, courts still 'must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review.'" *In re Marriage of Boyd*, 226 Or. App. 292, 303 (2009)(quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or. 185, 190-91 (1998)(on reconsideration)). The court satisfies this obligation by "including in its order a brief description or citation to the factor or factors on which it relies." *McCarthy*, 327 Or. at 188. "Those findings need not be complex or lengthy; they need not include criteria immaterial to the decision and not used by the trial court." *Kovac v. Crooked River Ranch Club and Maint. Ass'n*, 186 Or. App. 545, 553 (2003)(citing *McCarthy*, 327 Or. at 188; *Wright v. Jones*, 155 Or. App. 249, 252-

---

[3]Where an attorney fee award is mandated by another statute, the OR. REV. STAT. 20.075(1) factors do not apply to the analysis of whether to award fees. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1240 (D. Or. 2013).

53 (1998).

OR. REV. STAT. 20.075(1) provides:

(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith, or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties and their attorneys in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider under the circumstances of the case.

Brooks contends all of the factors, with the exception of the prevailing fee factor, support her claim for attorney fees. She asserts Defendants' conduct throughout this litigation establishes Caswell Sculptures filed the counterclaim to intimidate her into releasing her claims against Defendants; the counterclaim, to the extent it sought only an order requiring her to take possession of the Molds, was objectively unreasonable; and an award of attorney fees would encourage the filing of good faith

claims while discouraging the tactic of alleging a counterclaim that intimidates through the threat of a fee award. The court disagrees.

While neither Brooks nor Defendants were successful in the claims and counterclaims alleged, this does not equate to a finding the claims and counterclaims were objectively unreasonable. The court previously determined Brooks initiated this lawsuit in good faith and now expressly finds Caswell Sculpture's counterclaim was not objectively unreasonable in light of the relatively unique claim alleged and the absence of clear precedent. *Rogers v. RGIS, LLP*, 229 Or. App. 580, 189-90 (2009)("Also, pursuant to ORS 20.075, in deciding whether to award fees, the trial court properly considered the fact that it believed plaintiff's rest and meal break claims to be reasonable, especially in light of the fact that the law was unsettled at the time.")(footnote omitted). In support of the amount of attorney fees requested, Brooks represented the counterclaim "involved novel questions of law" and necessarily required her attorneys to "[look] to case law outside the jurisdiction to attempt to find analogous cases; that extensive research required additional time that would not be necessary in connection with claims covering more well tread ground." Consequently, Brooks effectively conceded this issue. (Pl.'s Mot. for Att'y Fees, ECF No. 202, at 8.)

Factor (b) of the OR. REV. STAT. 20.075(1) factors weighs in favor of denying Brooks's claim for attorney fees. Moreover, an award of attorney fees with regard to a claim raising novel issues of law, such as Caswell Sculptures's counterclaim under OR. REV. STAT. 79.0625, could serve to deter others from asserting similar good faith claims and defenses, and likely would have no effect on others asserting meritless claims or defenses. Accordingly, factors (c) and (d) also weigh in favor of the denial of attorney fees.

The parties to this action have vigorously litigated the issues relating to their business

relationship for the past six years, both in this court and the state courts, and have consistently alleged willful, malicious, and bad faith conduct against the other during this period. The court is not convinced one party engaged in conduct any more egregious than the other party but considers all parties equally responsible for the conduct giving rise to the litigation and the relative positions taken on issues during the litigation. Consequently, factors (a) and (e) are neutral. Neither party appears to have meaningfully pursued settlement in the instant case, leaving factor (f) neutral as well.

The court, having weighed the relevant factors set forth in OR. REV. STAT. 20.075(1), finds such factors favor Defendants. Consequently, the court exercises the discretion afforded it under OR. REV. STAT. 79.0625(3) and denies Brooks's motion for attorney fees.

*Conclusion*

Defendants' motion (ECF No. 199) to amend judgment and for sanctions is GRANTED to the extent the court failed to view the evidence relating to Brooks's ability to inspect the Molds in Defendants' favor but DENIED in all other respects. Brooks's motion (ECF No. 202 ) for attorney fees is DENIED.

DATED this 25th day of May, 2017.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge